IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-472-FL

| | |
|---|---|
| NORTH CAROLINA RIGHT TO LIFE POLITICAL ACTION COMMITTEE and NORTH CAROLINA RIGHT TO LIFE COMMITTEE FUND FOR INDEPENDENT POLITICAL EXPENDITURES, <br><br> Plaintiffs, <br><br> v. <br><br> LARRY LEAKE in his official capacity as a member of the North Carolina State Board of Elections, CHARLES WINFREE in his official capacity as a member of the North Carolina State Board of Elections, ROBERT CORDLE, in his official capacity as a member of the North Carolina State Board of Elections, J. DOUGLAS HENDERSON, in his official capacity as the Guilford County District Attorney, ROY COOPER, in his official capacity as the Attorney General of North Carolina, RONALD G. PENNY, in his official capacity as a member of the North Carolina State Board of Elections, and JOHN HEMPHILL, in his official capacity as a member of the North Carolina State Board of Elections, <br><br> Defendants. | ORDER |

This matter is before the court on plaintiffs' motion for summary judgment (DE # 29) and defendants' motion to dismiss for lack of jurisdiction, or in the alternative, motion for summary judgment (DE # 32). Defendants' memorandum in support of the motion to dismiss is also a

response in opposition to plaintiff's motion for summary judgment. Plaintiffs filed reply opposing defendants' motion/response. In this posture, the issues raised are ripe for ruling. For the following reasons, the court grants plaintiffs' motion and denies defendants' motion.

## STATEMENT OF THE CASE

Plaintiffs filed complaint in this court on September 9, 2011, seeking injunctive and declaratory relief. Plaintiffs contend that North Carolina General Statutes §§ 163-278.66 and 163-278.67, which regulate judicial elections and election campaigns in North Carolina through a system called a "matching funds scheme," violate the First and Fourteenth Amendments to the United States Constitution by unduly impinging upon protected political speech and association. Plaintiffs ask the court to declare the matching funds statutes unconstitutional and to permanently enjoin their enforcement. On November 15, 2011, plaintiffs filed the instant motion for summary judgment, contending that no facts are in dispute.

On December 9, 2011, defendants filed the instant motion to dismiss for lack of jurisdiction. Defendants' memorandum in support of the motion to dismiss also responds in opposition to plaintiffs' motion for summary judgment. In their motion and response, defendants contend that this court lacks subject matter jurisdiction under Article III of the Constitution to consider the instant matter. Alternatively, defendants seek summary judgment in their favor. Plaintiffs filed reply in opposition. On January 11, 2012, defendants filed a second declaration of Gary Bartlett, Executive Director of the State Board of Elections, supplementing affidavit first filed in support of defendants' motion to dismiss, describing certain policy decisions of the Board of Elections ("BOE").

No initial order regarding scheduling and planning and no case management order have been entered in this case. The parties agree that no factual dispute exists.

2

## STATEMENT OF FACTS

No material facts are in dispute. Article 22D of the Elections and Election Laws in North Carolina General Statutes, specifically, provisions §§ 163-278.62 through 163-278.70, regulates election campaigns in North Carolina through the North Carolina Public Campaign Fund. The provisions at issue became effective in 2002. The purpose of Article 22D is to "ensure the fairness of democratic elections in North Carolina and to protect the constitutional rights of voters and candidates." N.C. Gen. Stat. § 163-278.61. The statute is intended to ensure that campaigns are supported on a fair and equal basis and to preclude the "detrimental effects of increasingly large amounts of money being raised and spent to influence the outcome of elections, those effects being especially problematic in elections of the judiciary, since impartiality is uniquely important to the integrity and credibility of the courts." Id.

Two provisions in Article 22D establish the matching funds scheme: the reporting requirements provision and the matching funds provision. Under N.C. Gen. Stat. § 163-278.66(a), the reporting requirements provision, "[a]ny non-certified candidate with a certified opponent shall report total contributions[1] received to the Board . . . within 24 hours after the total amount of contributions received exceeds eighty percent (80%) of the trigger for matching funds."[2] N.C. Gen.

---

[1] A contribution is "any advance, conveyance, deposit, distribution, transfer of funds, loan, payment, gift, pledge or subscription of money or anything of value whatsoever, to a candidate to support or oppose the nomination or election of one or more clearly identified candidates, to a political committee, to a political party, or to a referendum committee, whether or not made in an election year, and any contract, agreement, promise or other obligation, whether or not legally enforceable, to make a contribution." § 163-278.6(6).

[2] "Matching funds" trigger is the dollar amount at which matching funds are released for certified candidates. See N.C. Gen. Stat. § 163-278.62(18). In the case of a primary, the trigger equals the maximum qualifying contribution for participating candidates. In the case of a contested general election, the trigger equals the based level of funding available under N.C. Gen. Stat. § 163-278.65(b)(4). A participating candidate is one who has filed a declaration of intent to participate under the matching funds scheme. See N.C. Gen. Stat. § 163-278.62(13). A non-participating candidate is a candidate running for office who is not seeking certification under the matching funds scheme. Id. § 163-278.62(11).

3

Stat. § 163-278.66. Similarly, any entity making independent expenditures "in support of or in opposition to a certified candidate or in support of a candidate opposing a certified candidate, or paying for electioneering communications, referring to one of those candidates, shall report the total expenditures or payments made to the Board . . . within 24 hours after the total amount of expenditures or payments made for the purpose of making the independent expenditures or electioneering communications exceeds five thousand dollars." N.C. Gen. Stat. § 163-278.66.

The matching funds provision, N.C. Gen. Stat. § 163-278.67(a), provides that when any report or group of reports shows that funds in opposition to a certified candidate or in support of a certified candidate's opponent exceed the trigger for matching funds, the BOE shall issue immediately to the certified candidate an additional amount equal to the reported excess within the limits set forth in the statute. N.C. Gen. Stat. § 163-278.67(a) further provides that:

> Funds in opposition to a certified candidate or in support of an opponent to that candidate" shall be equal to the sum of subdivisions (1) and (2) as follows:
>
> (1) The greater of the following:
>
>     a. Campaign expenditures or obligations made, or funds raised or borrowed, whichever is greater, reported by any one nonparticipating candidate who is an opponent of a certified candidate. Where a certified candidate has more than one nonparticipating candidate as an opponent, the measure shall be taken from the nonparticipating candidate showing the highest relevant dollar amount.
>
>     b. The funds distributed in accordance with G.S. 163-278.65(b) to a certified opponent of the certified candidate.
>
> (2) The aggregate total of all expenditures and payments reported in accordance with G.S. 163-278.66(a) of entities making independent expenditures or electioneering communications in opposition to the certified candidate or in support of any opponent of that certified candidate.

N.C. Gen. Stat. § 163-278.67(a). Violation of the matching funds provisions can result in civil penalties. See N.C. Gen. Stat. § 163-278.70.[3]

In 2006, plaintiffs brought a similar suit in this district, seeking to have the matching funds provisions declared unconstitutional. The court denied plaintiffs' request for preliminary injunction prior to the 2006 general election and ultimately dismissed the complaint. On appeal, the Fourth Circuit affirmed the dismissal. North Carolina Right to Life Committee Fund for Independent Political Expenditures v. Leake, 524 F.3d 427 (4th Cir. 2008). Since the 2006 lawsuit, plaintiffs contend they have made no expenditures supporting any nonparticipating judicial candidates or opposing any participating judicial candidate out of fear that the marching funds trigger would be initiated, and their funding support would go to a candidate they opposed.

In 2011, in Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 131 S. Ct. 2806 (2011), the Supreme Court found a matching funds scheme similar to North Carolina's to violate the First Amendment. There were no appellate judicial elections in North Carolina in 2011, so the viability of the matching funds statute was not tested. However, the town of Chapel Hill, North Carolina, has a public funding program similar to the matching funds statute, and at the time defendants filed their response, the BOE had voted unanimously to not disburse matching funds in light of Bennett, the Supreme Court case upon which plaintiffs now challenge the matching funds statute. When the North Carolina General Assembly convened in November 2011, it did not repeal the matching funds statute, however, defendants have offered evidence to show that the position of

---

[3] Plaintiffs contend that a knowing violation of the matching funds provisions is a Class 2 misdemeanor, however, as discussed further in this order, the court finds this to be inaccurate.

the BOE as of December 2011, is that it will not disburse matching funds in appellate judicial elections in light of Bennett. (Second Decl. Bartlett ¶ 1).

## DISCUSSION

A.  Standard of Review

Subject-matter jurisdiction may be challenged at any time and if it is lacking the case must be dismissed or remanded by the court. See Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c). The Fourth Circuit recognizes two types of challenges to subject matter jurisdiction. "First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," in which case the "facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks and citations omitted). "In the alternative, the defendant can contend . . . that the jurisdictional allegations in the complaint are not true," in which case the court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts. Id. at 192, 193.

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). A "material" fact is identified by the substantive law, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not simply rest on the allegations or denials in its

pleading, Anderson, 477 U.S. at 248-49, but instead "must come forward with specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original and quotation omitted).

B. Analysis

1. Subject Matter Jurisdiction

Defendants' motion to dismiss argues that the court does not have subject matter jurisdiction to address the instant motions because plaintiffs claims are moot. Because the mootness issue is jurisdictional, the court addresses it before considering plaintiffs' motion for summary judgment.

An actual "controversy" must exist at all stages of federal court proceedings. U.S. Const. art. III, § 2, cl. 1; See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980); Daimler Chrysler Corp., 547 U.S. at 352. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969); see also North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."). Mootness has often been described as "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) (quoting United States Parole Comm'n, 445 U.S. at 397).

Defendants argue that the BOE's December 2011 decision not to disburse campaign matching funds for appellate judicial elections renders defendants' claims moot. However, it is well established that mootness does not result from a defendant's voluntary cessation of allegedly illegal conduct. United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953); see also City of Memphis v.

7

Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). Defendants argue that this is not a voluntary cessation case because the BOE has indicated it will not comply with the matching funds statute. In support of this argument, defendants cite Wisconsin Right to Life, Inc. v. Schober, 366 F.3d 485 (7th Cir. 2004), in which the Seventh Circuit concluded that in a similar case the plaintiffs did not have standing because the Wisconsin Board of Elections announced its intention not to enforce the contested statutes. 366 F.3d at 491. As plaintiffs point out, the Schober case is distinguishable in that in Schober, a district court declared the statute unconstitutional in addition to the board's assurances that it would not enforce the statute. Id. Contrarily, in the instant case, no federal court has declared the North Carolina matching funds statutes unconstitutional.

The court finds the controversy is not moot. Even though the BOE has adopted a policy not to enforce the matching funds statutes, the North Carolina General Assembly has not repealed the law and aside from its stated intention not to abide by the matching funds provisions, nothing appears to stop the BOE from changing its policy. Dismissal on mootness grounds is inappropriate if the defendant voluntarily ceases the allegedly improper behavior but is free to return to it at any time. Only if there is no reasonable chance the defendant could resume the offending behavior is a case deemed moot on the basis of the voluntary cessation. Friends of the Earth v. Laidlaw, 528 U.S. 167, 189-90 (2000). Defendants claiming that voluntary compliance moots a case have a "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 190. Defendants have not made such a showing, and do not meet the burden. Accordingly, the controversy is a live one, and the court has subject matter jurisdiction to consider it.

8

### 2. Constitutionality of North Carolina Statutes

As set forth above, N.C. Gen. Stat. §§ 163-278.66 and 163-278.67(a) enable judicial candidates who participate in the matching fund scheme to be eligible to receive matching funds from the government based on contributions made in opposition to their candidacy. The Supreme Court has recently addressed statutory schemes similar to the North Carolina matching funds scheme in Davis v. Federal Election Comm'n, 554 U.S. 724 (2008) and Bennett, 131 S. Ct. 2806 (2011). Under Bennett, a scheme nearly identical to North Carolina's was found to impose a substantial burden on First Amendment rights, requiring the state to show a compelling interest to justify the burden.

Beginning with Davis, the Supreme Court considered a challenge to the "Millionaire's Amendment" of the Bipartisan Campaign Reform Act of 2002. 554 U.S. at 729. Under that amendment, if a candidate for the United States House of Representatives spent more than $350,000 of his personal funds, the opponent of the candidate who exceeded the limit was permitted to collect individual contributions up to $6,900 per contributor, three times the normal limit. Id.; Bennett, 131 S. Ct. at 2817. The Court acknowledged that the amendment did not impose an outright cap on a candidate's personal expenditures, but concluded that the amendment was unconstitutional because it "forced a candidate 'to choose between the First Amendment right to engage in unfettered political speech and subjection to discriminatory fund-raising limitations.'" Bennett, 131 S. Ct. at 2818 (citing Davis, 554 U.S. at 739). The Court found that the amendment constituted an unprecedented "penalty" and imposed a "substantial" burden on the exercise of the First Amendment right to use personal funds for campaign speech. Davis, 554 U.S. at 739-40.

9

In 2011, the Supreme Court considered the more specific issue of matching funds statutes in Bennett. The Court, closely following the logic of Davis, held that "like the burden placed on speech in Davis, the matching funds provision 'imposes an unprecedented penalty on any candidate who robustly exercises [his] First Amendment rights[s].'" Bennett, 131 S. Ct. at 2818. The Arizona matching funds statute offered matching or "equalizing" funds to publicly funded candidates when certain conditions were met. 121 S. Ct. at 2814. Matching funds were available in primary and general elections. Id. In a primary, matching funds were triggered when a privately financed candidate's expenditures, combined with the expenditures of independent groups made in support of the privately financed candidate or in opposition to a publicly financed candidate, exceeded the primary election allotment of state funds to the publicly financed candidate. Id. During the general election, matching funds were triggered when the amount of money a privately financed candidate received in contributions, combined with expenditures of independent groups made for the privately financed candidate or in opposition to the publicly financed candidate, exceeded the general election allotment of state funds to the publicly financed candidate. Id.

Once the matching funds were triggered, every additional dollar spent by a privately financed candidate during the primary resulted in one dollar of additional state funding to the publicly financed opponent. Id. In the general election, every dollar a candidate received in contributions, including the candidate's own money, resulted in roughly an additional dollar of state funding to the publicly financed opponent. Id. Notably, in describing the Arizona matching funds scheme, the Court specifically observed in that "Maine and North Carolina have both passed matching funds statutes that resemble Arizona's law." Id. at 2816 n.3.

10

Case 5:11-cv-00472-FL Document 41 Filed 05/18/12 Page 10 of 16

The Court found that the burdens placed on First Amendment rights in the Arizona statute were "more constitutionally problematic" than those at issue in <u>Davis.</u> <u>Id.</u> at 2818 (emphasis in original). The court noted that while in <u>Davis</u>, the publicly financed candidate merely got the right to raise more money, under the Arizona law, the publicly financed candidate received the benefit of "the direct and automatic release of public money," when the matching funds were triggered. <u>Id.</u> at 2818-19. The Court further noted the burdens the Arizona statute placed on independent expenditure groups, noting that while a candidate thinking of running for election at least had the option to choose whether or not to be publicly financed, independent expenditure groups did not. <u>Id.</u> at 2819.

Finding that the Arizona statute imposed a substantial burden on the speech of privately financed candidates and independent expenditure groups, the Court went further to find that Arizona offered no "compelling state interest" to justify the burden. <u>Id.</u> at 2825. The Court rejected arguments that "leveling the playing field" or alleviating potentially corruptive influences of large campaign contributions were sufficient state interests to justify the burdens imposed by the statute. <u>Id.</u> at 2825-27.

In the instant case, defendants offer no argument that the North Carolina matching funds statute is distinguishable from the Arizona law struck down in <u>Bennett</u>; nor do defendants offer any argument that the North Carolina matching funds statute does not impose a substantial burden on First Amendment speech. Instead, defendants rely on the argument that plaintiffs' claims are moot because the BOE has indicated that <u>Bennett</u> is in conflict with the matching funds statute. In the alternative, defendants argue that summary judgment is appropriate in favor of defendants, yet offer

11

no meaningful support for why this is so. Review of the parties' briefs reveals that defendants effectively acknowledge that the North Carolina matching funds provisions are inconsistent with Bennett, yet stop short of actually conceding or stipulating to this point.

Having found that the instant controversy is not mooted by the BOE's actions, and with no counter argument as to the constitutionality of the North Carolina matching funds statute, the court finds that the North Carolina statute is so similar to the Arizona statute in Bennett, that the logical conclusion is that the North Carolina statute places a substantial burden on candidates' and independent expenditure groups' First Amendment free speech rights.[4]

Having found that under Bennett, the North Carolina matching funds statutes imposes a substantial burden on the speech of privately financed candidates and independent expenditure groups, the second step of the inquiry requires the court to consider whether the statute is justified by a compelling state interest. 131 S. Ct. at 2824. In Bennett, the Supreme Court rejected the arguments that leveling the playing field is a compelling state interest. 131 S. Ct. at 2825 ("We have repeatedly rejected the argument that the government has a compelling state interest in 'leveling the playing field' that can justify undue burdens on political speech") (quoting Citizens United v. Fed. Election Comm'n, 130 S. Ct. 876, 904-05 (2010)). Additionally, the Court rejected argument that the matching funds statute serves a state interest in combating corruption and the appearance of

---

[4] The similarities between the Arizona statute and the North Carolina matching funds statute are numerous. Both arise out of public campaign funds in which a candidate can elect to participate, and once he or she participates, is subject to the matching funds provisions. See N.C. Gen. Stat. §§ 163-278.64; Bennett, 131 S. Ct. at 2814. Both statutory schemes have reporting requirements. See N.C. Gen. Stat. § 163-278.66; Bennett, 131 S. Ct. at 2815. Both statutory schemes create the same "effect" - they both provide for matching funds to be triggered to a participating candidate when a non-participating candidate raises money that exceeds the statutory amount, or if the total amount of payments made by entities making independent expenditures in support of the non-participating candidate or in support of an opponent of a participating candidate, exceeds the statutory amount. N.C. Gen. Stat. § 163-278.67. To borrow language from the Supreme Court, both statutory schemes create the "'beggar thy neighbor' approach to free speech," restricting the speech of some in order to enhance the voice of others, which the Court has held is contrary to the First Amendment. Bennett, 131 S. Ct. at 2821.

12

corruption. Id. at 2826. With no argument raised from defendants that the statute promotes a compelling state interest, the court finds that the North Carolina matching funds statute is unduly burdensome and not sufficiently justified to survive First Amendment scrutiny. See Bennett, 131 S. Ct. at 2828. Accordingly, summary judgment is appropriate for plaintiffs.

    3.    Dismissal of Defendants District Attorney of Guilford County and Attorney General of North Carolina

Defendants seek dismissal of defendant Roy Cooper, Attorney General of North Carolina, and defendant J. Douglas Henderson, District Attorney of Guilford County, arguing that they are not proper parties because any injury suffered by plaintiffs is not fairly traceable to them. In their reply, plaintiffs acknowledge other district court holdings that suggest dismissal of these defendants is appropriate, and note that they are willing to concede to dismissal as long as the court finds that plaintiff's injury can be sufficiently remedied through litigation solely against the BOE. The court declines to issue opinion as to what parties to an action would result in a sufficient remedy for plaintiffs' claims, but does consider whether the instant defendants are appropriate to be dismissed under relevant case law.

To invoke federal jurisdiction, plaintiffs must show that the injury they suffer is "fairly traceable to the challenged action of the defendant." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).[5] Article III's causation requirement requires "proof of substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005); Jackson v. Leake, 2006 WL 2264027 at *5 (M.D.N.C. 2006).

---

[5] The court notes for the record that there appears to be no dispute among the parties that the instant plaintiffs have suffered injury to satisfy Article III requirements, that is, the chilling of their First Amendment rights to political speech in the form of campaign contributions.

13

As alluded to earlier in this order, only civil penalties may be assessed for violations of the matching funds statute. N.C. Gen. Stat. § 163-278.70.[6] The district attorney for Guilford County and the Attorney General of North Carolina are not appropriate defendants to this suit. As to the district attorney of Guilford County, the court finds that the analysis in Jackson controls. As in Jackson, if plaintiffs were to violate the statute's reporting requirements, the BOE has the authority to impose civil sanctions. See N.C. Gen. Stat. § 163-278.70. That section directs the BOE, when determining a civil penalty, to "proceed in the manner prescribed in [N.C. Gen. Stat. § 163-278.34]." Id. Section 163-278.34(f) requires the BOE to "notify and consult with" the district attorney for Guilford County. This requirement is not sufficient to support a finding that any injury suffered by plaintiffs would be fairly traceable to the conduct of the district attorney of Guilford County. See Jackson, 2006 WL 2264027 (citing S. Pac. Transp. Co. v. Brown, 651 F.2d 613, 615 (9th Cir. 1980)).

Additionally, as in Jackson, where plaintiffs seek an injunction against the district attorney of Guilford County, any injunction against that individual would not affect the BOE's decision to impose civil sanctions as provided for in § 163-278.34. And if the BOE was enjoined from

---

[6] In their motion for summary judgment, plaintiffs argue that a knowing violation of the matching funds statute is a Class 2 misdemeanor. (Pls.' Mot. Summ J. 9). However, plaintiffs appear to erroneously quote N.C. Gen. Stat. § 163-278.27, which sets forth the specific provisions of the election and campaign laws that, if violated, constitute a Class 2 misdemeanor. See N.C. Gen. Stat. § 163-278.27(a)-(d). The matching funds provisions at issue here, §§ 163-278.66 and 163-278.67, are not found in the list in § 163-278.27. Id. While plaintiffs cite section 163-278.13 as support that criminal penalties can be imposed, section 163-278.13(f) states that any individual, candidate, political committee, referendum committee, or other entity that violates the provisions of "this section" is guilty of a Class 2 misdemeanor. N.C. Gen. Stat. § 163-278.13(f). There is no support for the contention that "this section" is meant to be applied more broadly that the specific statutory section of N.C. Gen. Stat. § 163-278.13 itself, which is part of Article 22A of North Carolina General Statutes, a separate article from the matching funds provisions. Cf. Wiggs v. Edgecombe County, 361 N.C. 318, 322, 643 S.E. 2d 904, 907 (2007) (engaging in statutory construction of a "section" of the North Carolina General Statutes and suggesting that a "section" is limited to the specific numeric section of the statute itself, such as § 163-278.13, and that "section" does not apply to separate articles within a general statutory scheme).

14

enforcing the provisions of the matching funds statutes, under § 163-278.34(f), the district attorney would never get involved. See Jackson, 2006 WL 2264027 at *6. Accordingly, with no argument lodged to the contrary, the court finds that plaintiffs have failed to satisfy the causation and redressability requirements of Article III as to defendant J. Douglas Henderson, district attorney of Guildford County, and he is dismissed from the case.

As to the claims against defendant Roy Cooper, Attorney General of North Carolina, where no criminal penalties are available for violation of N.C. Gen. Stat. §§ 163-278.66 and § 163-278.67, any argument of redressability based on the prosecutorial functions of the Attorney General are unavailing. Plaintiffs' complaint asserts that the Attorney General has the power to enforce North Carolina's public financing scheme and provide legal assistance to the BOE, which may enter litigation in assistance to counties where uniform administration of Chapter 163 of the General Statutes of North Carolina has been or would be threatened. (Compl. ¶ 10) (citing N.C. Gen. Stat. § 163-25). As to this claim, which plaintiffs have not expounded upon or further supported in their briefs, the court agrees with the reasoning in Jackson v. Leake, No. 5:06-CV-324 (E.D.N.C. March 30, 2007) (order granting defendants' motions to dismiss).

Plaintiffs have not shown sufficient connection between the Attorney General's authority to assist with litigation and the enforcement of the matching funds provisions against plaintiffs. While the Attorney General may offer legal assistance, enforcement is ultimately a matter for the BOE's consideration. See N.C. Gen. Stat. § 163-278.70. The harm plaintiffs can suffer in relation to enforcement of the matching funds statutes is fairly traceable to the BOE's, not the Attorney General's, conduct. No argument offered by plaintiffs to the contrary, the court similarly dismisses defendant Roy Cooper, Attorney General of North Carolina, from this action.

15

## CONCLUSION

For the foregoing reasons, the court GRANTS plaintiffs' motion for summary judgment (DE # 29) and DENIES defendants' motion to dismiss, or in the alternative, motion for summary judgment (DE # 32). Defendant J. Douglas Henderson, district attorney of Guildford County, and defendant Roy Cooper, Attorney General of North Carolina, are DISMISSED from this action for reasons set forth herein. The Clerk is directed to close this case.

SO ORDERED, this the __16__ day of May, 2012.

LOUISE W. FLANAGAN
United States District Judge