IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-472-FL

NORTH CAROLINA RIGHT TO LIFE )
POLITICAL ACTION COMMITTEE, et al., )
)
      Plaintiffs, )
)
      v. ) **ORDER**
)
LARRY LEAKE, et al., )
)
      Defendants. )

      This case comes before the court on the motion (D.E. 48) by plaintiffs North Carolina Right to Life Political Action Committee and North Carolina Right to Life Committee Fund for Independent Political Expenditures ("plaintiffs"), pursuant to 42 U.S.C. § 1988, for the recovery of attorney's fees and costs from defendants Larry Leake, Charles Winfree, Robert Cordle, Ronald G. Penny, and John Hemphill, who are members of the North Carolina State Board of Elections, all sued in their official capacities (collectively "defendants"). The motion has been fully briefed[1] and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Minute Entry after D.E. 59). For the reasons set forth below, the motion will be allowed in the amount of $52,426.91.

---

[1] In support of their motion, plaintiffs filed a memorandum (D.E. 53) and four declarations (D.E. 49 through D.E. 52) with exhibits (D.E. 49-1 through 49-4, D.E. 50-1 through D.E. 50-2, D.E. 51-1 through D.E. 51-2, D.E. 52-1). Defendants filed a memorandum (D.E. 57) in opposition, and plaintiffs filed a reply (D.E. 58) and a supplemental declaration (D.E. 59) with an exhibit (D.E. 59-1).

**BACKGROUND**

I.   PROCEDURUAL HISTORY

In this action, brought pursuant to 42 U.S.C. § 1983, plaintiffs challenged the North Carolina matching funds scheme in elections provided for under N.C. Gen. Stat. §§ 153-278.66 and 163-278.67 as violative of the First and Fourteenth Amendments to the United States Constitution. On 18 May 2012, the court entered an order (D.E. 41) allowing plaintiffs' motion for summary judgment (D.E. 29) and denying defendants' motion to dismiss and alternative motion for summary judgment (D.E. 21). (18 May 2012 Ord. 2, 16). The court found that the North Carolina scheme was comparable to the Arizona matching funds scheme the United States Supreme Court held unconstitutional in *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806 (2011) and, based on *Bennett*, ruled that the North Carolina matching funds scheme violated the First Amendment, as plaintiffs alleged. (*Id.* at 9-13). This court both declared the North Carolina scheme unconstitutional and enjoined its enforcement.[2] (*Id.* at 13).

As noted in the 18 May 2012 order, plaintiffs had in 2006 brought a suit ("*Jackson*") seeking, among other relief, to have these same statutory provisions declared unconstitutional, *Barbara Jackson, et al. v. Lorraine G. Shinn, et al.*, No. 5:06-CV-324-BR (E.D.N.C.) ("*Jackson*").[3] (18 May 2012 Ord. 5). This court dismissed the case, the Fourth Circuit affirmed, and the Supreme Court denied review. *Jackson v. Leake*, 476 F. Supp. 2d 515 (E.D.N.C. 2006), *aff'd sub nom N.C. Right to Life Comm. Fund for Ind. Political Expend. v. Leake*, 524 F.3d 427 (4th Cir.), *cert. denied sub nom Duke v. Leake,* 555 U.S. 994 (2008).

---

[2] In its order, the court also dismissed from the lawsuit defendants Roy Cooper, Attorney General of North Carolina, and J. Douglas Henderson, District Attorney of Guilford County. (18 May 2012 Ord. 13-15).

[3] "*Jackson*" as used herein refers to that litigation as a whole, including both trial and appellate proceedings.

2

## II. ATTORNEY'S FEES AND COSTS CLAIMED

In their motion and initial memorandum, plaintiffs requested a total of $75,162.91 in fees and costs. (*See* Mot. ¶ 7). This total includes $49,689.41 for the present litigation, comprising $41,125.66 for the firm of lead counsel James Bopp, Jr., The Bopp Law Firm ($39,814.00 in fees and $1,311.66 in costs) and $8,563.75 for local counsel Thomas J. Ashcraft, all fees. (*See id.* ¶ 5). The total sought also includes a portion of the fees and costs for work done by The Bopp Law Firm at the district court and Fourth Circuit levels in *Jackson*—namely, $25,473.50 ($24,969.50 in fees and $504.00 in costs). (*See id.* ¶ 6; Bopp Dec. (D.E. 49) ¶ 9). This brings the total request for that firm to $66,599.16. In support of their motion, plaintiffs submitted: the declaration of Attorney Bopp, along with his resume (D.E. 49-1), law firm biography (D.E. 49-2), and itemized time sheets providing the hourly rate and aggregate fee amount for each timekeeper at his firm, for both the work in this litigation (D.E. 49-3) and certain work in *Jackson* (D.E. 49-4); the declaration of Anita Y. Woudenberg (D.E. 50), an associate at The Bopp Law Firm, describing her as performing most of the work in both this litigation and *Jackson*; the declaration of Attorney Ashcraft (D.E. 52) describing his background, along with itemized time sheets for him for this litigation (D.E. 52-1); and the declaration of an attorney in this district, Steven B. Long (D.E. 51), who did not appear in the current or *Jackson* litigation, opining about the reasonableness of the fees sought in the instant market, along with his biography (D.E. 51-1) and an excerpt from a survey of North Carolina legal rates (D.E. 51-2).

In their reply, plaintiffs made several changes in their request for fees and costs in the current litigation. The Bopp Law Firm deducted $737.50 and Attorney Ashcraft $425.00 in fees for correction of a filing error; and The Bopp Law Firm added $3,825.00 in fees and $75.00 in costs for work on the motion for fees and costs. (*See* Reply (D.E. 58) 7; *see also* Supp. Bopp

3

Case 5:11-cv-00472-FL   Document 60   Filed 03/29/13   Page 3 of 16

Dec. (D.E. 59) ¶¶ 3, 4, 5). These changes bring the total sought by plaintiffs for the current litigation to $52,426.91, comprising $44,288.16 for The Bopp Law Firm ($42,901.50 in fees and $1,386.66 in costs) and $8,138.75 for Attorney Ashcraft. Plaintiffs make no change in the claim for *Jackson*, $25,473.50. The revised overall total fees and costs claimed is $77,900.41, an increase of $2,737.50. (*See* Reply ¶ 7). Of this, The Bopp Law Firm claims $69,761.66.

## DISCUSSION

I. APPLICABLE LEGAL PRINCIPLES

Section 1988 allows for the recovery of attorney's fees for prevailing parties:

> In any action or proceeding to enforce a provision of sections . . . 42 U.S.C. §§ 1981-1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. "A party 'prevails' within the meaning of § 1988(b) 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Cherry v. Mayor and City Council of Baltimore*, No. MJG-10-1447, 2012 WL 6019234, at *1 (D. Md. 30 Nov. 2012) (quoting *Lefmine v. Wideman*, 133 S. Ct. 9, 11 (2012)); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (stating that to qualify as prevailing, "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought"). A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (ciations omitted).

Following a determination that a party is a prevailing party, the court must determine the reasonable amount to award in fees and costs. *Banks v. Allied Crawford Greenville, Inc.*, No. 6:09–cv–01337–JMC, 2011 WL 2418666, at *1 (D.S.C. 13 Jun. 2011) ("Upon a finding that an award of attorneys' fees is appropriate, the court is charged with determining the reasonable

4

amount of fees to award to the petitioning party."). To determine the reasonable amount, courts calculate a "lodestar" amount. *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). The lodestar amount is determined by multiplying the number of reasonable hours by a reasonable rate. *Id.*; *McAfee v. Boczar*, __ F. Supp. 2d. __, No. 3:11cv646, 2012 WL 5398807, at *3 (E.D. Va. 2 Nov. 2012) ("The 'initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984))). "The lodestar amount is presumptively reasonable, but may be adjusted based on the circumstances of the case." *Coles v. Land's Towing and Recovery, Inc.*, No. 3:10-CV-00025, 2010 WL 5300892, at *2 (E.D. Va. 22 Dec. 2010); *see also Dodeka, LLC v. Amrol Davis,* No. 7:10–CV–17–D, 2010 WL 3239117, at *1 (E.D.N.C. 16 Aug. 2010) ("This lodestar figure 'provides an objective basis on which to make an initial estimate of the value of a lawyer's services.'" (quoting *Hensley*, 461 U.S. at 433)).

More specifically, the lodestar amount should be evaluated with guidance from the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). *Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239, 243 (4th Cir. 12 Aug. 2010) ("[W]e have directed that in deciding what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), a district court looks to the . . twelve factors" set forth in *Johnson*); *Assoc'd General Contractors of Am. v. Stokes,* No. 1:11cv795, 2012 WL 7782745, at *8 (E.D. Va. 20 Nov. 2012) (mag. judge's rep. & recommendation) (noting that court must calculate lodestar in light of *Johnson* factors and then consider whether time spent on unsuccessful claims needs to be subtracted from award), *adopted* 2013 WL 1155512 (19 Mar. 2013). These factors are: "(1) the time and labor required; (2)

5

whether there are any novel or difficult legal issues; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment by the attorney due to an acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case in the community; (11) the nature and length of the professional relationship with the client; and (12) attorney's fee awards in similar cases." *EEOC v. Bardon, Inc.*, No. RWT‑08‑1883, 2010 WL 989051, at * 2 (D. Md. 12 Mar. 2010) (applying *Johnson* factors); *see also Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir. 1995) (applying *Johnson* factors to attorney's fee award assessment to determine lodestar figure). The court must exclude from the fees allowed any hours which are "excessive, redundant, or otherwise unnecessary," including instances where a case is overstaffed or the billing was not exercised with good judgment. *Hensley,* 461 U.S. at 434. The burden is on the party seeking fees to justify the amount claimed. *Randle v. H & P Capital, Inc.*, No. 10–2258, 2013 WL 791793, at *2 (4th Cir. 5 Mar. 2013) ("'When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours [expended] are reasonable, the [lodestar] is presumed to be the reasonable fee contemplated' by the statute." (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984))); *Doe v. Odenton Volunteer Fire Co., Inc*., No. RDB–08–1281, 2009 WL 3418567, at *2 (D. Md. 20 Oct. 2009) (noting that prevailing party bears burden of establishing the justification for hours expended).

## II. DEFENDANTS' OBJECTIONS TO PLAINTIFFS' CLAIM FOR FEES AND COSTS

Defendants concede that plaintiffs qualify as prevailing parties under 42 U.S.C. § 1988 in the current litigation. Defendants also do not contest plaintiffs' counsel's expertise or the hourly rates used for their work in the present case. Defendants do, however, contest the claim for

6

computerized research in the present case (which totals $882.00) and the claim for a portion of the fees and costs from *Jackson*, including retroactive application of current rates to work in that case. The court will address these objections in turn.

    A.    **Computerized Legal Research**

Defendants' contention that the costs of computerized legal research are not recoverable rests on the decision in *Hexion Specilty Chemicals, Inc. v. Oak-Bark Corp.*, No. 7:09-CV-105-D, 2012 WL 2458638, at *3 (E.D.N.C. 27 Jun. 2012). As plaintiffs note, however, that case involves a post-judgment bill of costs pursuant to Fed. R. Civ. P. 54 and not a fee request pursuant to § 1988. *Bland v. Fairfax Cty.*, No. 1:10-cv-1030, 2011 WL 5330782, at *13 (E.D. Va. 7 Nov. 2011) ("The [Fourth Circuit] stated that 'where attorneys' fees are expressly authorized by statute . . . Rule 54(d) is no longer relevant.'" (quoting *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978))). Several courts in this circuit analyzing costs for computerized legal research in the present context have allowed them. *E.g.*, *Wolfe v. Green*, No. 2:08-CV-1023, 2010 WL 3809857, at *15 (S.D. W. Va. 24 Sept. 2010) ("[I]n the context of a fee-shifting provision, the charges for online legal research may properly be included in a fee award."); *Jones v. Bryant,* No. Civ.1:01 CV 00936, 2004 WL 1013308, at *3 (M.D.N.C. 4 May 2004) (allowing prevailing Title VII plaintiff to recover costs for computerized research as part of fee award), *aff'd*, 121 Fed. Appx. 498 (4th Cir. 2005); *see also Levka v. City of Chicago*, 107 F.R.D. 230, 231 (N.D. Ill. 1985) ("[The] City is correct that [charges for computerized research on Lexis] are not specifically authorized by 28 U.S.C. § 1920. But civil rights actions such as [plaintiff's] also entitle the plaintiff to an award of a reasonable attorney's fee as part of the cost [under] 42 U.S.C. § 1988." (citations omitted)). In addition, the declaration of Attorney Long

7

states that "attorneys in this market typically charge separately for . . . computerized legal research." (Long Dec. ¶ 6).

In accordance with this precedent and evidence, the court finds that the costs of computerized research claimed by plaintiffs for the current litigation are recoverable and will award them. Notwithstanding the absence of further objections by defendants to plaintiffs' claim for fees and costs in the present litigation, the court has evaluated the other aspects of the claim from this case under the *Johnson* factors and other applicable law, and finds the amounts claimed to be reasonable. The court will therefore award the full amount of fees and costs claimed by plaintiffs for the instant case.

### B. *Jackson* Litigation

It is well established that in certain circumstances an award under § 1988 may include fees and costs for prior litigation. In *Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234 (1985), the Supreme Court held that attorney's fees incurred in a prior related state administrative proceeding were properly recoverable in a subsequent civil rights case to the extent that the fees were for a "discrete portion" of the work that was "useful and of a type ordinarily necessary" to the outcome in the civil rights case. 471 U.S. at 241; *see also North Carolina Dep't of Transp. v. Crest St. Comm. Council*, 479 U.S. 6, 15 (1986) ("A court hearing one of the civil rights claims covered by § 1988 may still award attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation. . . . Moreover, even if the prior proceedings is not a 'proceeding to enforce' one of the § 1988 civil rights laws, the 'discrete portion of the work product from the administrative proceedings' that 'was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement' can be part of the attorney's fees awarded under § 1988." (quoting *Webb*, 471 U.S. at

8

243)); *Schneider v. Colegio de Abogados de Puerto Rico,* 187 F.3d 30, 33 (1st Cir. 1999) ("[P]re-suit fees may be awarded under 42 U.S.C. § 1988 only for 'discrete' work 'that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached.'" (quoting *Webb*, 471 U.S. at 243)); *Schlimgen v. City of Rapid City*, 83 F. Supp. 2d 1061, 1071 (D.S.D. 2000) ("[F]ees may be awarded for 'research or investigation done in connection with' a related proceeding, to the extent it 'proved directly relevant to the successful prosecution of the later civil rights' action." (quoting *McDonald v. Armontrout*, 860 F.2d 1456, 1462 (8th Cir. 1988))). "The burden is upon the prevailing party to establish that the services for which it seeks fees actually advanced the civil rights litigation." *Clark v. Bd. of Educ. of Township of Neptune*, 907 F. Supp. 826, 830 (D.N.J. 1995).

While the prior proceeding in *Webb* was an administrative proceeding, the test announced in *Webb* has been applied in other settings. For example, some courts have allowed fee requests for work performed defending a federal plaintiff in a state criminal proceeding giving rise to a federal civil rights claim. Specifically, fees have been deemed compensable in such an instance where "the work in question was functionally a substitute for work that reasonably would have been required in the federal litigation itself." *Thomas v. Federick*, No. 87-1950, 1992 WL 17273, at *4 (W.D. La. 29 Jan. 1992); *see also Stacy v. Stroud*, 845 F. Supp. 1135, 1143 (S.D. W. Va. 1993) (applying standard in *Webb* and allowing attorney hours spent on criminal proceeding for driving under the influence where the hours were "directly relevant to the civil rights litigation"); *Fletcher v. O'Donnell*, 729 F. Supp. 422, 429-30 (E.D. Pa. 1990) (allowing limited recovery of time spent at criminal trial underlying civil claim and holding that criminal action was not an action to enforce civil rights statute and only time that was otherwise necessary to prepare for civil case was compensable). Likewise, work conducted on a habeas corpus action

preceding a civil rights claim has been deemed recoverable where the work was both useful and of a type ordinarily necessary to the successful outcome in the civil rights claim and obviated the need for comparable work in the later proceeding. *McDonald v. Armontrout*, 860 F.2d 1456, 1462 (8th Cir. 1988). And the court in *G&G Fire Sprinklers v. Bradshaw*, 156 F.3d 893, 906 (9th Cir. 1997), *vacated on other grounds*, 526 U.S. 101 (1999), permitted recovery of fees from an earlier action where the first proceeding was settled in an agreement providing for it to be re-filed if the state took further action, which the state ultimately did. The court found the two actions to be so related, with the second essentially a continuation of the first, that the fees from the first action were properly recoverable. *Id.* at 908.

The parties did not cite, and the court did not locate, any case dealing with the precise circumstances presented here, that is, a party seeking to recover fees from a prior unsuccessful and now-terminated federal civil rights case. Application here is consistent with the extension of the test beyond administrative proceedings as in the precedent cited. Moreover, as discussed in detail below, there are substantial differences between the instant case and the *Jackson* case. The *Webb* test provides a means of excluding from an award work in a prior proceeding, irrespective of the nature of that proceeding, that is not sufficiently related to the case before the court to justify such work being compensated.

While plaintiffs make their request for fees (and costs) from *Jackson* under the *Webb* standard—claiming fees for a discrete portion of the work in the prior case—they seem to argue that fees for all the work are actually recoverable because *Jackson* was a civil rights action and not some other type of proceeding. (*See, e.g.*, Rep. 3 & n.3, 6). This contention appears to

10

Case 5:11-cv-00472-FL   Document 60   Filed 03/29/13   Page 10 of 16

ignore the differences between the two cases and the judicial rejection of the claims in *Jackson*.[4] But the court need not resolve the issue in light of plaintiffs' reliance on the *Webb* standard.

As indicated, plaintiffs' claim for fees and costs from *Jackson* totals $25,473.50. This total includes $24,969.50 in fees, representing 82.7 hours in attorney time, and $504.00 in costs, comprising all costs in the case reported on the time sheets produced, which were for computer research. (*See Jackson* Time Sheets 9). The total amount of fees and costs in *Jackson* shown on the time sheets was $32,527.50 (*see id.*), although Attorney Bopp represents that the amounts on the time sheets "are a very small portion of those actually expended" (Bopp Dec. ¶ 9). Plaintiffs are excluding from their claim for the *Jackson* case $7,054.00 in fees shown on the time sheets, representing 23.6 hours of attorney time. (*See Jackson* Time Sheets 9). Thus, the "discrete" portion of the work from *Jackson* claimed by plaintiffs equals over 78% of the total fees and costs from that case reported on the time sheets produced. Plaintiffs divide the work from *Jackson* for which they seek these fees and costs into four groups: preparation of the complaint; preparation of the motion for preliminary injunction; development of the theory of the case; and development of the defense against attacks on the standing of the plaintiffs. (*See* Woudenberg Dec. ¶ 4).[5] The court finds that plaintiffs have failed to show that any of these fees and costs

---

[4] To support this argument, plaintiffs cite to *North Carolina Dept. of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 17 (1986), stating "Where the prior proceeding was to enforce a civil rights statute for which 42 U.S.C. § 1988 provides for a fee award, all of the work on that proceeding may be compensable," subject to the requirements of reasonableness and partial success. (Rep. 2-3). Plaintiffs' reliance on *Crest* is misplaced. It stands for the more modest principle that attorney's fees pursuant to § 1988 may not be awarded in an independent action that is commenced solely to obtain attorney's fees arising from a previously settled administrative proceeding. 479 U.S. at 15.

[5] Attorney Woudenberg stated:

> Specifically, the work done in preparing the Complaint and motion for preliminary injunction for *Jackson*—i.e., working with the common plaintiffs, doing the necessary research on the statutes, claims, and defendants, establishing standing and developing the theory of the case—largely replaced the time that would otherwise have been spent on these same tasks in *NCRL-PAC*. Similarly, the time spent developing the theory of the case and defending against attacks on Article III standing in *NCRL-FIPE* was directly relevant to and substituted for, to some extent,

were of a type ordinarily necessary to the outcome in the instant case and therefore that any of them should be awarded.

Among other reasons, there is no procedural nexus between the instant case and *Jackson*. The present case is not ancillary to or dependent upon the first, nor was the *Jackson* case necessary to lay the foundation for the instant litigation. Instead, the cases are two wholly separate lawsuits.

Furthermore, as noted in the court's order allowing summary judgment, the basis for the ruling here that the statutes were unconstitutional was the Supreme Court's holding in *Bennett*, a ruling which post-dated the work done in the previous litigation. Plaintiffs themselves identify *Bennett* as the foundation of the present case in Paragraph 1 of their complaint:

> [Plaintiffs] claim that North Carolina General Statutes §§ 163-278.66 and 163-278.67, which regulate judicial elections and election campaigns in the State of North Carolina through a matching funds scheme, violate the First and Fourteenth Amendments to the United States Constitution by unduly impinging upon protected political speech and association as set forth in *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806 (2011).

(Compl. ¶ 1). Similarly, Paragraph 2, after reciting the rejection of *Jackson* at every level, explains: "However, this past term, the United States Supreme Court in [*Bennett*] struck down Arizona's matching funds scheme." (*Id.* ¶ 2). It is obviously no coincidence that plaintiffs filed the instant case less than three months after *Bennett* was decided. Thus, the decisive factor in the outcome of this case was the *Bennett* decision, not work from the unsuccessful *Jackson* case.

Irrespective of other considerations, the lapse of over six years between commencement of *Jackson* (8 August 2005) and this action (9 September 2011) undermines any potential

---

> time spent crafting and framing these issues in the present case, and, in my opinion, directly affected the course of this case.

(Woudenberg Dec. ¶ 4).

contribution of the work from the *Jackson* case to the outcome in this action. The passage of such an extended period would tend to render research and strategies stale and diminish the familiarity of the attorneys who worked on the *Jackson* case with their work product in it. This is so even when considering the appellate proceedings in *Jackson*, which concluded on 3 November 2008, almost three years prior to commencement of the instant case.

Review of the time sheets submitted by plaintiffs further substantiates that the work in the *Jackson* case was not ordinarily necessary for the success in the instant litigation. They belie specifically plaintiffs' contention that work done on the initial complaint in *Jackson* substituted for work that would otherwise have been required in the instant case. The initial complaint in *Jackson* (*Jackson* D.E. 1) was 35 pages long, asserted 13 claims for relief, and took about 30 hours to prepare, including time excluded by plaintiffs from their claim. (*See Jackson* Time Sheets, *e.g.*, entries dated 14 Mar. 2005, 28 Apr. 2005, 17 May 2005, 31 May 2005). In contrast, the complaint in the instant case is just 18 pages long and asserts only 2 claims, but took about 45 hours to prepare. (*See* Time Sheets, *e.g.*, entries dated 25 Jul. 2011, 29 Jul. 2011, 3 Aug. 2011, 1 Sept. 2011)). If the two cases were as similar as plaintiffs contend and the work on the complaint from *Jackson* were as helpful as plaintiffs contend, one would expect preparation of the complaint in the instant action to require less work than preparation of the complaint in *Jackson*, particularly since the complaint here is half as long and asserts less than one-sixth the number of claims. In fact, though, the complaint in the instant case required about 50% more work.[6]

---

[6] If the work on the complaint from *Jackson* were deemed to be as helpful as plaintiffs contend, there would arguably be a question whether the time spent on the complaint in the instant case was excessive. The court does not reach this issue because, as indicated, plaintiffs have not demonstrated the claimed helpfulness of this work from the prior case.

The time sheets for the other work in *Jackson* for which plaintiffs claim fees also do not demonstrate that it contributed to the success in the instant case. Indeed, the entries are insufficiently specific to determine the precise nature of the work performed and its relationship to the outcome here. (*See id., e.g.,* entries dated 14 Oct. 2005, 2 Dec. 2005, 5 Dec. 2005).

The court acknowledges that some of the work done in *Jackson* may have been useful to some degree to counsel in the instant case. But that is not sufficient to make the fees for such work compensable under *Webb*. As discussed, it requires not only that the prior work be useful, but also that it be of a type ordinarily necessary for the outcome in the case before the court. And understandably so. Any experience an attorney gleans from handling prior cases involving similar laws and claims may be useful in subsequent cases. The law does not ignore such experience, but implicitly recognizes it by applying hourly rates reflecting such experience when fees otherwise are compensable. As recently noted by the Sixth Circuit, allowing recovery from a wholly separate action "could lead to all sorts of oddities, as illustrated by this case where counsel would be permitted to recover fees for thousands of hours of time spent litigating a case they *lost*." *Binta B. ex rel. S.A. v. Gordo*n, --- F. 3d ---, Nos. 10–6005, 12–5532, 2013 WL 1136544, at *18 (6th Cir. 20 Mar. 2013). The *Binta* court went on to note that "it would be ridiculous to allow counsel to collect fees for time spent drafting a brief in a prior losing case and then recycling it in another case," a circumstance similar to the instant facts. *Id.* ("Accordingly, we hold that fees under § 1988 are not recoverable for work performed in a completely separate case, even if, as here, that case involves the same defendant, and even if the defendant agrees to use the materials from the separate case in the present action. If attorneys want fees for work performed in the separate action, whether for discovery or time spent drafting a brief, they can seek fees in that separate action.").

14

The court concludes that plaintiffs have not demonstrated that the fees and costs claimed for work from *Jackson* are recoverable in this case, and the court will therefore exclude them from the award to plaintiffs' counsel. *See D'Orazio v. Washington Twp.*, No. 12-1169, 2012 WL 4874976, at *2 (3d Cir. 2012) (affirming denial of fees spent on optional administrative hearing where plaintiff did not establish an "inextricable link" between the administrative hearing and the civil rights claim); *Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir. 2007) (denying recovery of fees from administrative proceeding where first proceeding was not *necessary* to bringing the civil rights claim); *Atl, Inc. v. City of Seattle*, No. C09-1240RSL, 2012 WL 1949044, at *2 (W.D. Wash. 29 May 2012) (excluding fees for time spent prior to filing lawsuit where plaintiff failed to carry burden of demonstrating that work was expended on the litigation and ordinarily necessary to advance the civil rights litigation); *Clark*, 907 F. Supp. at 831 (denying compensation for work spent in state tenure proceeding where counsel did not adequately establish a link between services rendered in earlier proceeding and later civil rights suit). Because the court concludes that the work done in *Jackson* is not compensable, it need not consider defendants' related argument that any such time should be evaluated at the then prevailing market rates.

## **CONCLUSION**

For the foregoing reasons, the court awards counsel for plaintiffs fees and costs in the amount of $52,426.91. Defendants shall pay plaintiffs' counsel this sum on or before 26 April 2013, unless plaintiffs' counsel agree to payment on a different schedule. Payment shall be by one check payable to the trust account of The Bopp Law Firm in the amount of $44,288.16 and another check payable to the trust account of Attorney Ashcraft in the amount of $8,138.75, unless plaintiffs' counsel agree to a different means of payment.

15

SO ORDERED, this 29th day of March 2013.

/s/ James E. Gates
James E. Gates
United States Magistrate Judge